# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL TODD FULTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-247-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Michael Todd Fulton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 14, 1978, and was thirty-one years old at the time of the administrative hearing. He graduated high school and attended college for three years (Tr. 49). He has past relevant work as a customer service agent, manager, title clerk, cashier clerk, sales clerk, and general office clerk (Tr. 32). The claimant alleges that he has been unable to work since June 2, 2006 because of bipolar disorder and attention deficit hyperactivity disorder (ADHD) (Tr. 152).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 4, 2007. The Commissioner denied his application. ALJ Tela L. Gatewood held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 7, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She also made alternative findings at step five. First, taking claimant's substance abuse into consideration, the ALJ found that the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following

nonexertional limitations: i) no work involving contact with the general public; ii) no work involving the handling of money; and iii) the claimant is unable to adapt to a work situation (Tr. 31). The ALJ then concluded that the claimant was unable to perform past relevant work and that there was no work in the general economy that the claimant was capable of performing (Tr. 31-32). Thus, the ALJ found that the claimant was disabled at step five (Tr. 33). However, the ALJ found that when the claimant's substance abuse was removed from consideration, the claimant was capable of performing the full range of work at all exertional levels but would be limited to performing three to four step tasks, work requiring no contact with the general public, and work involving no handling of money (Tr. 35). At step four, the ALJ concluded that the claimant was capable of performing his past relevant work as a general office clerk and was therefore not disabled (Tr. 39). Alternatively, the ALJ found that there was other work in the general economy that claimant was capable of performing, *i. e.*, surveillance systems monitor and envelope addressor (Tr. 40). Thus, the ALJ concluded in the alternative that the claimant was not disabled at step five (Tr. 41).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the materiality of the claimant's substance abuse. As part of this argument, the claimant argues that the ALJ improperly analyzed the opinion of state consultative physician Dr. Theresa Horton, Ph.D. The undersigned Magistrate Judge agrees.

The claimant was admitted for inpatient treatment at the Jim Taliaferro Community Mental Health Center (JTCMHC) on March 8, 2006 for suicidal thoughts and cutting himself (Tr. 229). At that time, it was noted that claimant had attempted suicide on two previous occasions by overdosing on pills and cutting his wrists (Tr. 229). He also reported that after being clean for one year, he relapsed on alcohol, cocaine, methamphetamine, and pills, was found passed out in his car, and was arrested (Tr. 229). The following day, the claimant stated that he had been depressed over the weekend because he had lost his cat and broken up with his boyfriend (Tr. 230). He was discharged on March 10, 2006 with a diagnosis of bipolar disorder, polysubstance dependence, and borderline personality traits (Tr. 230). Prior to and after his inpatient admission, the claimant also received outpatient treatment at JTCMHM as part of a drug court program (Tr. 231). On July 25, 2005, the claimant reported increased depression and suicidal ideations. The claimant reported that he had been sexually abused when he was eight or nine years old by a teenage foster boy for which he saw a therapist (Tr. 267). From February 2005 through April 2006, the claimant was tested for drugs and only tested positive once during that time frame in February 2005 (Tr. 350).

In August 2007, the claimant began receiving treatment at the Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSSO) (Tr. 489). The claimant reported a suicide attempt at the age of 12 and that he began taking Ritalin when he was a child but was doing fine on his medications (Tr. 489). He was noted to be experiencing increased suicidal thoughts upon finding out he was HIV positive (Tr. 500). In a review

assessment dated May 19, 2008, the claimant was noted to function sporadically within the community, attend cosmetology school but not regularly, and experience rapid cycling mood swings (Tr. 496).

State examining physician Dr. Theresa Horton, Ph.D. evaluated claimant on March 28, 2008 and completed a Mental Status Examination (Tr. 446-50). Dr. Horton wrote that claimant was diagnosed with ADHD at the age of eight or nine, began engaging in risky behaviors (including using alcohol) at the age of ten, and began using other drugs at the age of 16 (Tr. 446). However, Dr. Horton noted that he exhibits the risky behaviors only when he is in a depressed cycle of his bipolar disorder (Tr. 446). In addition, the claimant has exhibited a pattern of impulsive behaviors (Tr. 446). The claimant "has never been able to work for others, so his parents bought a salon when he was very depressed" where he worked for five years as a manager (though "his duties were quite simple, mostly social") (Tr. 446-47). While the claimant worked for five years for his parents, it is also noted that they accommodated his schedule to keep him employed (Tr. 448). The claimant, though, reported that he had a nervous breakdown in May 2006 during which he was very suicidal, cut his wrists, and overdosed on medication (Tr. 447). He was noted to be taking Depakote, Wellbutrin, Strattera, and Trazadone (Tr. 447). Dr. Horton noted that while claimant was working ten hours per week as a cashier, he was having a difficult time maintaining his work schedule (Tr. 447). During manic episodes, he stays up all night on the internet or is very social (Tr. 447). However, at the time of the evaluation, he was sleeping 14-16 hours per day (Tr. 447).

The claimant was noted to have experienced problems with concentration and focus since early childhood and began to have significant mood problems in adolescence (Tr. 447). He is most likely to drink alcohol when he is depressed (Tr. 448). Dr. Horton's ultimate diagnosis was bipolar disorder, type I, currently mixed and history of polysubstance abuse, in remission for three months (Tr. 449). Dr. Horton opined that claimant was "capable of understanding and managing simple and complex instructions and tasks, yet not while adjusting and adapting into an occupational setting" and that claimant was unable to manage benefits on his own behalf (Tr. 449).

State reviewing physician Dr. Kathleen Gerrity, Ph.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on April 24, 2008 (Tr. 451-68). Dr. Gerrity found that claimant had mild limitations in restriction of activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace (Tr. 465). In the Mental Residual Functional Capacity Assessment, Dr. Gerrity found that claimant was only moderately limited in three categories: i) ability to carry out detailed instructions; ii) ability to maintain attention and concentration for extended periods; and iii) ability to interact appropriately with the general public (Tr. 451-52). Though Dr. Gerrity found claimant's allegations to be credible, she offered significantly different opinions than state examining physician Dr. Horton, especially in terms of claimant's ability to adapt to a work situation (Tr. 453). This is despite the testimony from the claimant's mother, for whom claimant worked for five years, that claimant had a difficult time keeping a job,

and notes from Dr. Horton that claimant's parents "certainly accommodated his schedule to keep him employed" while he was working for them (Tr. 448).

The claimant's counselor at MHSSO, Beth Patterson, completed a Residual Functional Capacity Assessment form (Mental) on May 12, 2009 (Tr. 735-39). Ms. Patterson opined that claimant was moderately limited in the following capacities: i) ability to understand and remember very short and simple instructions; ii) ability to maintain attention and concentration for extended periods; iii) ability to sustain an ordinary routine without special supervision; iv) ability to make simple work-related decision; v) ability to interact appropriately with the general public; vi) ability to ask simple questions or request assistance; vii) ability to accept instructions and respond appropriately to criticism from supervisors; viii) ability to be aware of normal hazards and take appropriate precautions; and, ix) ability to set realistic goals or make plans independently of others. Further, Ms. Patterson opined that claimant was markedly limited in the following capacities: i) ability to remember locations and work-like procedures; ii) ability to understand and remember detailed instructions; iii) ability to carry out very short and simple instructions; iv) ability to carry out detailed instructions; v) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; vi) ability to work in coordination with or proximity to others without being distracted by them; vii) ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods; viii) ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; ix) ability to respond appropriately to changes in the work setting; and x) ability to travel in unfamiliar places or use public transportation.

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423. When drug abuse is present, the ALJ's task is to determine first whether the claimant is disabled. If the ALJ finds that the claimant is disabled, then the ALJ determines whether the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The issue to be resolved is whether the claimant would still be found disabled if the claimant stopped using drugs. 20 C.F.R. § 404.1535(b). To resolve this issue, the ALJ evaluates which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2). If the remaining limitations are deemed not disabling, then the claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(i). Conversely, if the remaining limitations are deemed disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(ii).

In making the finding that the claimant's substance abuse was material to her finding of disability, the ALJ apparently relied on the opinions of two non-examining state physicians, Dr. Gerrity and Dr. Goodrich (who merely concurred with Dr. Gerrity's opinion) and rejected the opinion of state examining physician Dr. Horton. In addition, there is no medical opinion in the record that explicitly distinguishes between or separates out the claimant's substance abuse from his mental health impairments. There is evidence in the record, however, that claimant is more likely to use alcohol when he is depressed (Tr. 448). In addition, there is also evidence in the record that claimant has experienced long-term mental health issues beginning at the age of eight (Tr. 267).

First, the ALJ's reliance on reviewing physician opinions is erroneous. The ALJ assigned great weight to the opinion of Dr. Gerrity to support her finding that the claimant was not disabled when his substance abuse was factored out. However, Dr. Gerrity's opinion seems to state that claimant is not disabled even when factoring *in* the issue of substance abuse. The court needs the ALJ to clarify this in order to review the ALJ's decision on this point. *See Confere v. Astrue*, 235 Fed. Appx. 701, 703 (10th Cir. 2007) ("The ALJ mentions Dr. Heinbecker's assessment during his discussion of the evidence . . . but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of] Dr. Heinbecker's conclusion that [was inconsistent with the ALJ's RFC determination]. . . . The ALJ could not have accepted and incorporated the opinions of the state agency physicians into his RFC because his RFC directly conflicts with [their] assessment.") [unpublished opinion]. In

addition, the ALJ also failed to adequately explain why she was adopting the opinion of reviewing physicians over that of state physician Dr. Horton, who actually had an opportunity to examine the claimant. The ALJ apparently rejects the well-established rule that, in general, examining physician opinions deserve greater weight than reviewing physician opinions, *see Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) ("[R]eports of *reviewing* physicians are . . . accorded less weight than those of *examining* physicians.") [citation omitted] [emphasis in original], by proffering a justification that would be common to *all* reviewing physician opinions, *i. e.*, that the reviewing physician opinions in this case deserved greater weight because they "had an opportunity to review the claimant's longitudinal record" (Tr. 37). This is in error. *Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not adequately explain why the opinion of a non-examining physician deserved greater weight than the opinion of an examining physician) [unpublished opinion].

    Finally, shortly after the Social Security Act was amended to deny a disability determination based on substance abuse, the Social Security Administration distributed a teletype to clarify the ways in which the law should be applied. The teletype provided that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) [internal quotations omitted]. Thus, "the agency directed that if the effects of a claimant's mental illness could not be separated from the

effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.* [emphasis in original].  The ALJ relies on no medical evidence in finding that the claimant's substance abuse was material to her finding of disability and instead, seemingly ignores the evidence of record that suggests that claimant's substance abuse is explained, at least in part, by his mental illness, *i. e.*, that claimant is more likely to use alcohol when he is depressed (Tr. 448).  *See Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) ("The courts are in apparent agreement, however, that an ALJ must identify at least *some* medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking drugs.  The case law bears this conclusion out, and this court has found no authority to the contrary."), *citing Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Nevis v. Apfel*, 2000 WL 342665, *10 (N.D. Cal. Mar. 24, 2000); *Davis v. Apfel*, 1999 WL 972007, *4 (E.D. Pa. Oct. 25, 1999).

Because the ALJ failed to properly analyze the medical evidence of record in assessing the impact of substance abuse on the claimant's disability, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record.  If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma